## Feathers et ux. v. Baer et ux.

*Llewellyn E. Lloyd*, for plaintiffs.

*Walter E. Glass*, for defendants.

GRIFFITH, J., August 16, 1944.—

### Statement of pleadings

This is a bill in equity brought by John F. Feathers and Layola M. Feathers, his wife, against Carl R. Baer and Frieda E. Baer, his wife, for the purpose of requiring defendants to remove a fence alleged to be a spite fence and a nuisance.

The bill avers that plaintiffs, husband and wife, are the owners of a lot of ground situated in the Berkley Hills section of Upper Yoder Township, Cambria County, Pa., a suburban district of the City of Johnstown, located less than one half mile from the city limits; that defendants are the owners of the adjoining lot, both lots fronting on Blair Street; that in 1939 plaintiffs had erected on their lot a dwelling house at a cost of approximately seven thousand dollars and have lived in said house since its erection, and that defendants likewise reside in a dwelling house erected on the ad-

joining lot; that from the time plaintiffs moved into their new home in 1939 they have been subjected to various acts of annoyance, threats, disturbances, breaches of the peace, etc., on the part of defendants, especially on the part of Carl R. Baer, one of the defendants, and that as a result criminal prosecutions have been brought and in one case defendant Carl R. Baer was found guilty by a jury of the charge of assault and battery in the court of quarter sessions of this county, and in another case was placed under bond on a surety of the peace charge; that in January 1944 defendants erected a solid board fence along the boundary line separating the lot of plaintiffs and defendants, said fence being eight feet in height and five feet distant from the windows of plaintiffs' house, thereby, to a great extent, shutting out the light and air from rooms in plaintiffs' house; that said fence was erected without cause and for malicious motives, is being maintained by defendants for the purpose of annoyance to plaintiffs, and is a private nuisance within the meaning of the Act of May 26, 1939, P. L. 231, 53 PS §4231; that plaintiffs have no adequate remedy at law; that they are personally annoyed and their property is depreciated in value due to the erection of said fence; and that defendants have been notified to abate said nuisance and have refused to do so.

Defendants filed preliminary objections to the bill, which were dismissed on April 8, 1944, whereupon defendants filed an answer, stating that any acts of annoyance, threats, and breaches of the peace which may have occurred were on the part of plaintiffs and not on the part of defendants; denying that the said fence was erected without cause and for malicious motives, but averring that the same was erected so that defendants may fully enjoy their own property; denying that the fence is a private nuisance; denying that the property is located in a suburban district of the City of Johnstown; averring that plaintiffs have an adequate remedy at law, that they are not being personally annoyed, and

that their property is not being depreciated in value due to the erection and maintenance of the fence.

Plaintiffs thereupon amended their bill by making an additional averment that the said fence was erected and is maintained by defendants out of malicious motives, serves no useful purpose to defendants, and that the same is parallel to and five feet distant from the northerly side of plaintiffs' house and shuts out light, air, and view from their windows, and that the said fence constitutes a private nuisance.

Defendants filed an amended answer, in which they averred that immediately upon service of the bill upon them, although not enjoined by preliminary injunction, they stopped work on said fence, which they aver is being erected entirely upon defendants' property. Defendants deny that said fence is a solid board fence, but aver that it is a picket fence, constructed of boards 5½ inches wide set with 1 inch of space between each board, and aver that the fence at its highest point will be approximately 7 feet high on defendants' side. Defendants further aver that the fence is not five feet, but approximately eight feet from plaintiffs' house, and deny that the fence shuts out light, air, and view from the rooms of plaintiffs or darkens their rooms to any appreciable extent. Defendants further aver that the height of the completed fence as contemplated will be reduced as it approaches Blair Street, and aver that they intend constructing the fence not only along the entire side of their property adjoining plaintiffs but also along the rear of their lot as far as their garage. Defendants specifically deny that the fence was erected out of malicious motives and that it constitutes a private nuisance. They aver that the fence is being erected to protect defendants' flowers, shrubs, and trees from winds and storms coming from a northerly and westerly direction. . . .

### Discussion

The difficulties between the parties to this action began shortly after plaintiffs purchased the lot adjoining

defendants'. It appears that plaintiffs were sued by defendant Carl R. Baer for drawing plans for the construction of his house. Later, Baer committed an assault and battery upon the brother of Layola M. Feathers and was convicted on December 12, 1941, in the court of quarter sessions of this county. During the trial of this case John F. Feathers was a witness for the Commonwealth. There was also a prosecution against Baer by John F. Feathers on a surety of the peace charge. We are convinced that it was as a result of these disputes and altercations that defendants erected the fence which is here complained of. In addition to the testimony of plaintiffs, the justice of the peace of Upper Yoder Township was called as a witness, and testified that in 1943, after the settlement of a case against Carl Baer for the illegal carrying of firearms, he suggested to Baer that since the case had been settled he join the fire company and take part in community activities, but that Baer replied "No, I am not going to do such a thing, I am going to keep to myself, I am going to build myself a fence and fence myself in, and everybody will let me alone and I will let everybody else alone." This occurred on June 2, 1943, and the fence was started in the fall of that year. The squire testified that the storms in that vicinity come from the northwest and that, while a fence along the rear of defendants' lot might be some protection to their shrubs, a fence along the south side of the lot next to Feathers' would be no protection whatever. As a matter of fact defendants testified that the sole reason for the fence was the protection of their shrubbery and flowers from the winds, and defendants themselves testified that the winds which they fear come from the north and the west. The fence in question might be some small protection from the wind coming directly from the west, since the property line is not in a directly east to west course but more in a northwest direction, yet it could obviously be of no protection whatever from a wind either from the north or from the northwest be-

cause it was erected on the southerly line of defendants' property.

Defendants called an architect, who testified that he made a detailed study of the garden end of the Baers' lot, but he could not remember whether he prepared it in 1942 or 1943. However, he said it was paid for in August 1943. He said that defendant Carl Baer, and not he, brought up the matter of the erection of a fence, and that Baer, and not he, conceived the idea of using a fence as a windbreak. He further testified that his plan could be put into effect with a fence four feet high.

It will be noted that defendants did not testify that they intended to build a fence around their entire property, but only along their line which adjoins plaintiffs' property and for a short distance in the rear of their lot, from the end of that line to their garage. Moreover, it will also be noted that the portion of the fence which they built first, which is now standing, is at a point where it would do plaintiffs the most harm. Moreover, the finished side of the fence faces defendants' lot and the unfinished side is but a few feet from plaintiffs' living-room windows. Defendants have referred to this fence as a picket fence. However, a glance at plaintiffs' exhibit no. 4 clearly indicates that it is not what is commonly known as a picket fence but, rather, a board fence, although not a solid board fence since there is a space of one inch between each board.

We are convinced that the sole motive which actuated defendants in constructing the fence in dispute was that of malice and retaliation. We are also convinced that there is no substantial benefit derived by defendants from the construction of a fence of this height. Certainly any trifling benefit which might accrue to them could just as well be obtained if the fence had a maximum height of four feet.

At the common law there was a divergence of opinion as to whether a spite fence could be directed to be removed. According to the early and many recent decisions under the common law an owner of land might

erect a high and unsightly fence such as this on his own land for the express purpose of shutting out light and air or view from his neighbor, without being subjected to any action therefor. However, there has been recently a decided tendency to abandon the rule laid down by the earlier decisions and to adopt a more just and common-sense view of the question and, therefore, it is now widely held that an adjoining landowner may enjoin the erection or maintenance of a spite fence if the same was erected for the sole purpose of injuring him in the lawful and beneficial use of his property: 22 Am. Jur. 547; also 2 C. J. S. 44.

While it is, of course, true that when one pursues a strictly legal right his motive is immaterial, yet certainly no one should be permitted to build and maintain an entirely useless structure for the sole purpose of injuring his neighbor. The modern view is stated in the Restatement of the Law of Torts, vol. 4, sec. 829, as follows:

"Under the rules stated in §§826-828, an intentional invasion of another's interest in the use and enjoyment of land is unreasonable and the actor is liable when the harm is substantial and his conduct is (a) inspired solely by hostility and a desire to cause harm to the other; or (b) contrary to common standards of decency."

Under the comment on clause (a) we find the following:

"Malicious conduct. Where one's sole purpose in what he is doing is to annoy and harm his neighbor, his conduct has no utility which the law will recognize. Even the owner of land in fee simple is not privileged to use the land solely for the purpose of harming his neighbors, and if he causes them substantial harm, he is responsible if his conduct was for a nonbeneficial use and solely for the purpose of causing such harm."

A spite fence is used as an illustration of the rule set forth in this section.

We have not discussed the effect of the Act of May 26, 1939, P. L. 231, 53 PS §4231, because we are satisfied

that even in the absence of this statute the spite fence in question is a continuing nuisance and should be abated. However, plaintiffs do not request the removal of the fence in toto, but merely that it be reduced in height. We, therefore, arrive at the following

### Conclusions of law

1. The court has jurisdiction of the parties and the subject matter in controversy.

2. The erection of a fence of the height and character of the one erected by defendants was unnecessary for the protection of defendants' flowers, shrubbery, trees, etc.

3. Defendants derived no substantial benefit of any character from the construction of said fence.

4. Malice was the dominant motive for defendants' erection of said fence, and its erection was inspired by hostility and a desire for retaliation and to cause harm to plaintiffs.

5. The fence is a spite fence and is a continuing nuisance which may be abated at any time.

6. Since defendants have not shown that they derived any substantial benefit from the erection of the fence, malice becomes an important factor.

7. If the fence is of any benefit to defendants whatever, a fence four feet in height would be of equal benefit.

8. The bill should be sustained and an injunction issue.

### Decree nisi

And now, August 16, 1944, upon consideration of the foregoing case, it is ordered, adjudged, and decreed as follows:

That the bill is sustained and that a mandatory injunction issue directed to defendants, commanding them within 60 days of the date of this decree to remove all that portion of the fence described in the bill and the findings of fact throughout its entire length which extends above and beyond the height of four feet from

the surface of the ground upon which said fence is built, thereby reducing said fence to the height of four feet;

That defendants pay the costs of this proceeding.

Unless exceptions are filed hereto within 10 days' notice of the filing hereof, this decree nisi shall become the final decree in the above-entitled case.